986 F.2d 1427
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Barry HOLLOWAY, Petitioner-Appellant,
v.
Robert J. TANSY, Respondent-Appellee.
 No. 91-2085.
 United States Court of Appeals, Tenth Circuit.
 Jan. 20, 1993.
 
 1
 Before HOLLOWAY and SEYMOUR, Circuit Judges, and ROGERS,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 ROGERS, District Judge.
 
 
 4
 Petitioner Barry Holloway, a state prisoner, appeals from an order of the district court denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Holloway seeks habeas relief following his conviction by a jury of criminal sexual contact of a minor in violation of N.M.Stat.Ann. 30-9-13(A)(1) and criminal sexual penetration of a minor in violation of N.M.Stat.Ann. 30-9-11(A)(1). Finding no error of constitutional dimensions in his convictions, we affirm the denial of the writ.
 
 
 5
 Prior to January 1986, petitioner was married to Anita Holloway. Anita Holloway had a daughter ("D"), and a son from a previous marriage. The couple had one child of their own. The couple was having marital difficulties in January 1986. There were arguments in front of the children and discussions of divorce.
 
 
 6
 On January 10, 1986, after there was an argument and talk about divorce in front of the children, D told her mother that petitioner had touched her "in my private parts." The police were contacted. D was interviewed by a police detective and examined at a hospital. At that time, D was nine years old.
 
 
 7
 Ultimately, petitioner was charged with sexual contact and sexual penetration. The sexual penetration was alleged to have occurred some time between June 1, 1985 and November 1, 1985. The petitioner was convicted on both charges, but the convictions were reversed and remanded for a new trial. He was retried and again found guilty of both charges. His convictions were affirmed by the New Mexico Court of Appeals, and his petition for a writ of certiorari was denied by the New Mexico Supreme Court. He then sought habeas relief in federal court. The district court denied his petition for a writ of habeas corpus after adopting the proposed findings of a magistrate.
 
 
 8
 The evidence against the petitioner at his state court trial came primarily from three sources: (1) the testimony of D; (2) the testimony of a psychologist, Dr. Ziemen, who interviewed D and thought she was credible; and (3) the testimony of a physician, Dr. Quinlin, who examined D and thought there was some physical evidence of penetration.
 
 
 9
 The petitioner raises three arguments in this appeal: (1) that his rights to a fair trial and confrontation were denied when D's uncle made hand signals to her while she was testifying; (2) that his rights to compulsory process and a fair trial were denied when the trial court excluded testimony regarding D's sexual knowledge at age four or five; and (3) that the evidence of his guilt was insufficient.
 
 
 10
 In a collateral attack on a state conviction under § 2254, the ultimate burden of establishing that the state proceeding violated the Constitution remains on the petitioner. Beachum v. Tansy, 903 F.2d 1321, 1325 (10th Cir.), cert. denied, 111 S.Ct. 269 (1990).
 
 Hand Signals
 
 11
 During the trial, it was determined that D's uncle, Colt Anderson, had made hand signals from the back of the courtroom while D testified. He also went in and out of the courtroom during her testimony. Counsel for the petitioner brought these matters to the attention of the trial judge. Petitioner's counsel asked for a mistrial and argued primarily that he was concerned that Mr. Anderson, in leaving the courtroom during the trial, had talked to other persons who were going to testify. He also mentioned that he had been made aware that Mr. Anderson had made some hand signals to D while she testified. The trial judge allowed petitioner's counsel to present whatever he desired on these issues. Petitioner's counsel chose to call Mr. Anderson and the two witnesses who had been waiting outside the courtroom to testify.
 
 
 12
 Mr. Anderson testified that he did indeed make some hand signals to D while she testified. He stated that he was trying to calm her down; that he made a hand signal to try to get her to take a deep breath. There was also some indication, although not from the uncle's testimony, that he may have given D a "thumbs up" signal. Mr. Anderson also admitted that he had left the courtroom during D's testimony and entered the room where witnesses were waiting to testify. He testified that he went into the room only to get a pen and paper. The witnesses confirmed that Mr. Anderson had entered the room and that no conversations had taken place concerning any of the trial testimony. The trial judge denied petitioner's motion for a mistrial.
 
 
 13
 Petitioner contends that his rights to confrontation and a fair trial were violated when Mr. Anderson made the hand signals to D while she testified in an effort to comfort her and calm her down. He asserts that the hand signals violated his rights even if they affected only D's demeanor, and not the content of her testimony.
 
 
 14
 The confrontation clause guarantees criminal defendants the right to confront their accusers. Coy v. Iowa, 487 U.S. 1012, 1016 (1988). The purpose of the confrontation clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact. Maryland v. Craig, 497 U.S. 836 (1990).
 
 
 15
 Under the circumstances of this case, we do not find that the petitioner's rights to confrontation or a fair trial were violated. We recognize the impropriety of a spectator providing signals to a witness and the cases cited by the petitioner in which courts found that such actions required a new trial. The problem, however, faced by the court in this instance is that we have no evidence that the hand signals in any way altered D's testimony or demeanor or the jury's perception of that testimony. There is no evidence in the record that D saw the hand signals or that she reacted to them if she did. Without such evidence, we would be forced to speculate that D saw the hand signals and that they somehow affected her demeanor or her testimony. We are unwilling to make such a leap. In sum, we do not find that the petitioner has sustained his burden in proving that his constitutional rights were violated.
 
 Exclusion of Certain Evidence
 
 16
 During the trial, petitioner's counsel called a state juvenile probation officer named Samuel James to the stand. Mr. James had become closely acquainted with Anita Holloway in 1980, when D was three or four years old. The prosecution objected when petitioner's counsel asked Mr. James if he had discussed anything of a sexual nature with D. After a bench conference, the trial judge sustained the objection and no further questions of any kind were asked.
 
 
 17
 Petitioner contends that the exclusion of Mr. James' testimony violated his rights to a fair trial and compulsory process. He contends that the testimony of Mr. James concerning prior conversations he had with D concerning sexual matters would have bolstered his contention that D had the capability to fabricate the charges. He further argues that this testimony would have refuted D's testimony and Dr. Ziemen's testimony relating to D's innocence about sexual matters.
 
 
 18
 Unfortunately, the bench conference was not well tape-recorded, and it is difficult to determine from the broken transcript what anyone is saying or on what basis the court decided to exclude the testimony. The trial judge appeared to base his ruling on the following points: (1) the substance of Mr. James' testimony was vaguely presented--we do not know what the substance of the conversation or observation was; (2) it was remote in time--D was only three or four (or perhaps five) years old when it happened; and (3) counsel did not establish a foundation for the evidence by first asking D or Dr. Ziemen if she had had prior conversations or observations with Mr. James concerning sexual matters.
 
 
 19
 Having carefully reviewed the evidence presented at trial, the court does not find that the petitioner's right to a fair trial was violated by the trial judge's ruling on the prosecution's objection. "Any errors in the admissibility of evidence are not grounds for habeas relief absent fundamental unfairness so as to constitute a denial of due process of law." Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir.1990). We find no error in the trial judge's decision. The evidence sought to be presented was indeed remote and vague. Moreover, we do not find that the petitioner's right to compulsory process was denied. In order to establish a violation of the compulsory process clause of the Sixth Amendment, there must be a showing that the excluded evidence would have been material and favorable to the defense in ways not merely cumulative of other evidence. United States v. Valenzuela-Bernal, 458 U.S. 858, 873 (1982). The court's ruling on Mr. James' testimony did not preclude the petitioner from presenting a defense. The evidence in question was not material to the petitioner's case. The evidence that petitioner sought to offer was cumulative of other evidence in the record. There was adequate evidence in the record that D had prior sexual knowledge from film strips she viewed at school and activity and conversations with friends. In sum, we find no violation of petitioner's rights.
 
 Insufficient Evidence
 
 20
 Petitioner argues that there was insufficient evidence for his conviction of criminal sexual penetration of a minor. Petitioner contends that the prosecution failed to establish an incident of penetration within the time frame charged in the information: June 1 to November 1, 1985.
 
 
 21
 When testing the sufficiency of the evidence in the context of a habeas petition, the state conviction must stand unless no rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). The evidence "must be substantial; that is, it must do more than raise a mere suspicion of guilt." Beachum, 903 F.2d at 1332.
 
 
 22
 D testified that "something happened" between the petitioner and her after the family returned from a summer vacation in California but before the family went to the state fair that year. She also testified that during the time frame when this happened, her mother was wearing a blue work uniform. D's subsequent testimony left no doubt that the "something" that had "happened" was an act of penetration. She testified that she had fallen asleep in the living room of their house while wearing a pink nightgown. She related that she was awakened when the petitioner began touching her. She testified that he pulled up her nightgown, pulled down her panties, and then had intercourse with her. Anita Holloway testified that the family had gone to California in June 1985, that she began wearing a blue work uniform on July 1, 1985 while working at Long John Silver's restaurant, and that the family attended the state fair in late September.
 
 
 23
 Petitioner suggests that the evidence was insufficient because (1) D's testimony concerning the time frame of the incident was vague; and (2) D's testimony related to an incident that was not charged by the prosecution. The latter argument relates to petitioner's assertion that D testified to an incident different from the one upon which the petitioner was arrested because the clothing she identified as wearing prior to the incident was different at trial (pink nightgown) than in her initial statement (sweatsuit).
 
 
 24
 We find no merit to either contention. The evidence was sufficient to establish beyond a reasonable doubt that the petitioner committed the crime of sexual penetration of a minor under New Mexico law. The petitioner had been provided with the details of this charge in a statement of facts filed by the prosecution prior to the first trial. The testimony given by D at trial was in accord with this statement. Her testimony, along with her mother's testimony, established a sufficient time frame for the act of penetration. In sum, the evidence was adequate to support the jury's verdict.
 
 
 25
 Accordingly, the judgment of the district court denying the petitioner's writ of habeas corpus is AFFIRMED.
 
 
 26
 The mandate shall issue forthwith.
 
 
 
 *
 The Honorable Richard D. Rogers, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 3.63